UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
MICHAEL BARONE,

                    Plaintiff,

                                        MEMORANDUM & ORDER
        -against-                       17-CV-3689 (JS)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
----------------------------------X
APPEARANCES
For Plaintiff:      Michael Barone, pro se
                    11 Radford Road
                    Lake Grove, New York 11747

For Defendant:      Jason P. Peck, Esq.
                    Special Assistant U.S. Attorney
                    United States Attorney's Office
                    Eastern District of New York
                    271 Cadman Plaza East
                    Brooklyn, New York 11201

                    Stephen P. Conte, Esq.
                    Social Security Administration
                    Office of the General Counsel
                    26 Federal Plaza, Room 3904
                    New York, New York 10278


SEYBERT, District Judge:

        Pro se Plaintiff Michael Barone brings this action

pursuant to Section 205(g) of the Social Security Act (42 U.S.C.

§ 405(g)), challenging the Commissioner of Social Security's

denial of his application for disability insurance benefits.

Presently pending before the Court is the Commissioner's motion

for judgment on the pleadings pursuant to Federal Rule of Civil

Procedure 12(c).  (Def.'s Mot., D.E. 15.)  For the following

reasons, the Commissioner's motion is DENIED. Plaintiff's case is REMANDED to the Commissioner for further consideration in accordance with this Memorandum and Order.

BACKGROUND[1]

I.   Procedural Background

Plaintiff applied for disability insurance benefits on November 2, 2013, alleging disability from May 9, 2012.[2] (R. 10.) Plaintiff noted many issues, including anxiety, depression, and learning disorder with impairment in reading and written expression. (R. 12.) After his application was denied on February 28, 2014, Plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on December 10, 2015. (R. 10.) Plaintiff was represented by counsel at the hearing and testified along with a vocational expert. (R. 36-37.)

Notably, at the onset of the hearing, prior to any testimony, the ALJ inquired of Plaintiff's attorney about the completeness of the record:

> ALJ: Do you consider the record complete at this time?

---

[1] The background is derived from the administrative record filed by the Commissioner on September 21, 2017. (R., D.E. 10). "R." denotes the administrative record. For purposes of this Memorandum & Order, familiarity with the administrative record is presumed. The Court's discussion of the evidence is limited to the challenges and responses raised in the parties' briefs.

[2] This Order refers to the period between May 9, 2012 (the onset of disability) and December 31, 2017 (the last date of insurance coverage) as "the relevant period."

ATTY: Well, we were trying to get the, a final evaluation from the psychiatrist who just said, referred to the prior evaluation that's in the --
ALJ: So is there anything --
ATTY: I was trying to get a more specific --
ALJ: that I'm missing that's going to affect my decision?
ATTY: Possibly. I've requested a specific response to my request for a fully-detailed RFC. Thus far, they have just said see my notes.
ALJ: Okay. I will --
ATTY: Okay.
ALJ: -- give you seven days –
ATTY: Okay.
ALJ: -- Mr. Epstein. Okay, now, with that being said, we'll give you seven days to get those additional records, if you're able to.

(R. 39.) Again, at the conclusion of Plaintiff's hearing, the ALJ reminded Plaintiff's attorney that he had seven days to get an opinion from Plaintiff's doctor and then she would issue a decision. (R. 89.)

Almost two months after Plaintiff's hearing, on February 1, 2016, the ALJ issued her decision finding that Plaintiff was not disabled. (R. 10-19.) That decision notes that "[a]dditional evidence was proffered and submitted into evidence after the hearing, exhibited as 8F." (R. 10.) This additional evidence included rehabilitation records from New Horizon consisting of an intake summary from therapist Julie Stark, dated July 28, 2015 (R. 330-40) (duplicative of R. 292-302) and a psychiatric evaluation from Dr. Bethzaida Palma-Aquino ("Dr. Palma"), dated October 1, 2015. (R. 341-346.)

On April 18, 2017, the Appeals Council denied Plaintiff's request for review, making the February 1, 2016 decision the Commissioner's final decision. (R. 1-6.) Plaintiff filed this action on June 19, 2017. The Commissioner moved for judgment on the pleadings on November 15, 2017, (see Def.'s Mot.), and Plaintiff opposed the motion on December 19, 2017, seeking remand based on new evidence submitted to this Court (Pl.'s Br., D.E. 19).

II. <u>Evidence presented to the ALJ</u>

    A.   <u>Testimonial Evidence</u>

Plaintiff was sixty-one years old at the time of the administrative hearing. (R. 42.) He lives with his wife and one of his non-dependent children, future son-in-law, and grandson in Lake Grove, New York. (R. 43-44, 188.) Plaintiff has an eighth-grade education; he was placed in special education classes at the age of fifteen. (R. 48-51, 190.) Plaintiff cannot read a newspaper but he can read a simple sentence and do simple math. (R. 52-54.) He claims that he is illiterate and that nobody knows including his own children. (R. 73.) Plaintiff has a driver's license but had to take the written portion of the test four times. (R. 44-45.) Plaintiff can go shopping, do laundry, make light meals, do housework and garden, but cannot take public transportation because he does not know how to or where to get off unless someone tells him. (R. 67-68.) Plaintiff has friends but

has a problem with strangers and does not like to be in crowds. (R. 70.)

Plaintiff began working for Brook Wood Management ("Brook Wood") at the age of nineteen and continued to work there for about thirty-eight years. (R. 56, 59.) He became a superintendent of the apartment complex in the 1970s and lived there rent free until the 1980s. (R. 62.) In 1981, Plaintiff became the general manager as the business grew and by 2000 he oversaw approximately six complexes. (R. 64.) Prior to his termination in 2012, Plaintiff managed twelve complexes and supervised forty employees despite his inability to read or write. (R. 61-62.) Plaintiff gave depositions for Brook Wood but never reviewed contracts or bills, or signed checks. (R. 63-64.) He primarily relied on oral communication at work, while others in the office did the reading and writing for him. (R. 62-66, 72-73.) Plaintiff was terminated in May 2012 by the sons of his boss who had taken over the business following his death. (R. 246.)

Plaintiff alleges that his emotional problems began on May 9, 2012, the day he lost his job. (R. 57, 66.) He claims that he has no pain in his body, and that everything is working okay, but that he is depressed, scared, nervous, and has anxiety and panic attacks. (R. 71-77.) Following his termination from Brook Wood, Plaintiff attempted to work as a food delivery truck driver but stopped working because he could not find the stops or

5

remember the street signs. (R. 78-80.) Plaintiff also worked without pay on a friend's coffee truck on and off for a few months in 2012. (R. 57-58.)

Plaintiff has no problem verbally communicating with people; he only has a problem with reading and writing. (R. 74-75.) Plaintiff claims that he cannot work because of post-traumatic stress disorder, anxiety, severe depression, and high blood pressure. (R. 189.)

Ms. Dale Pasculli ("Pasculli"), an impartial vocational expert, testified at the hearing. (R. 81-89.) The ALJ presented Pasculli with a hypothetical individual who had the same age, education, and prior work experience as Plaintiff and had the ability to work at all exertional levels, limited to simple, routine, and repetitive tasks. (R. 82.) The hypothetical individual was capable of work in a low-stress job, defined as not requiring an assembly line pace, with only occasional decision making required, and occasional changes in the work setting; and was limited to tasks that do not require reading above the third-grade level or writing above the third-grade level. (R. 82.) Pasculli testified that such an individual could not perform Plaintiff's prior work as a superintendent. (R. 82.) Pasculli further noted that an individual with these characteristics would be able to perform the following jobs: cleaner, housekeeper; photocopying machine operator; and automobile detailer. (R. 83.)

Pasculli then testified that if the individual in the hypothetical was illiterate rather than able to read and write at a third-grade level, he would not be able to perform any of these jobs. (R. 83.) Pasculli's testimony explained that in order to perform these level 1 educational development jobs, Plaintiff would need to be able to recognize the meaning of 2,500 words; print simple sentences, simple series of numbers, names and addresses; and recognize some written words. (R. 83-84.)

Plaintiff's counsel presented Pasculli with a hypothetical individual who had poor to no ability to relate to others or deal with the public in the workplace, had poor to no ability to maintain attention and concentration, and had poor or no ability to relate predictably in a social setting. (R. 86.) Pasculli testified that such individual would not be able to perform the jobs she previously mentioned. (R. 86.) However, when questioned further by the ALJ, Pasculli testified that if the individual was capable of frequent or even occasional interaction with the general public, coworkers and supervisors, and was able to maintain concentration for at least ninety percent of the workday, he would be able to perform these jobs. (R. 86-88.) The acceptable amount of absenteeism for these jobs is one day per month. (R. 87.)

B.   Medical Evidence

According to his medical records, Plaintiff has been in outpatient psychiatric treatment since 2013. (R. 264.) Plaintiff has been treated by his primary care physician, Dr. Nicholas Livrieri since 1964, who prescribed Toporol for his high blood pressure. (R. 212-13.)

Plaintiff was first evaluated by Dr. Palma, a psychiatrist at the Pederson-Krag Center, in November 2013 for severe depression, anxiety, and post-traumatic stress disorder. (R. 248-60.) Plaintiff complained of, among other things, being afraid around other people, difficulty sleeping, nightmares, anxiety about his inability to read and write, and paranoia about his age discrimination lawsuit against his former employer. (R. 249.) Dr. Palma diagnosed Plaintiff with a generalized anxiety disorder and an unspecified type of delusional disorder. (R. 253.) According to Plaintiff's disability appeals report, Dr. Palma prescribed Bupropion for Plaintiff's severe depression and Trazadone for his anxiety. (R. 213.) Additionally, Dr. Palma's records show that Plaintiff was prescribed Wellbutrin in 2013. (R. 287, 303.) According to Dr. Palma's August 2014 functional assessment of Plaintiff, Plaintiff had no useful ability to function in the following areas: relating to others, dealing with the public, maintaining attention/concentration, and relating predictably in social situations. (R. 289-90.) Following the closure of Pederson-Krag, Dr. Palma continued to treat Plaintiff

at New Horizon Counseling Center. (R. 341-42.) Dr. Palma's most recent psychiatric evaluation was on October 1, 2015, (R. 341), when she diagnosed Plaintiff with unspecified anxiety disorder and major depression single episode, moderate. (R. 346.) She reported that Plaintiff was alert, able to maintain adequate attention span, his concentration was adequate, his memory was intact and judgment and impulse control were adequate. (R. 345.)

On February 20, 2014, Dr. Paul Herman performed a consultative psychiatric evaluation of Plaintiff at the request of the Commissioner. (R. 264-68.) Plaintiff reported that he had no significant difficulties until he was terminated from his job. (R. 264.) He reported that he is nervous and tense, has difficulty concentrating and focusing, is irritable, and has a low mood. (R. 265.) Dr. Herman diagnosed Plaintiff with an adjustment disorder with mixed anxiety and depressed mood, chronic; a learning disorder with impairment in reading and written expression; hypertension; insomnia; and status post lap band surgery. (R. 267.) Dr. Herman found that there was no "evidence of significant limitation with respect to [Plaintiff's] ability to follow and understand simple directions and instructions, perform simple tasks, maintain attention and concentration at a level sufficient for low-level employment, maintain a regular schedule, learn new tasks, make appropriate simple work-related decisions, or relate adequately with others. There does appear to be evidence of moderate to

marked limitation with respect to his ability to perform complex tasks and appropriately deal with stress." (R. 266.) According to Dr. Herman, Plaintiff's psychiatric problems "do not appear to be significant enough to interfere with [Plaintillf's] ability to function on a daily basis to the extent that vocational functioning would be precluded." (R. 266-67.)

On February 27, 2014, M. Graff ("Graff"), a non-examining state agency psychological consultant, reviewed the record and determined Plaintiff's residual functional capacity. (R. 91-98.) He found Plaintiff was "moderately limited" in his abilities to: understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. (R. 95-96.) Plaintiff was "not significantly limited" in his abilities to: remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or in proximity to others without being distracted by them; make

simple work-related decisions; be aware of normal hazards and take appropriate precautions; and, travel in unfamiliar places or use public transportation. (R. 95-96.) Plaintiff had no social interaction limitations but does have adaptation limitations. (R. 96.) Graff concluded that the evidence as a whole did not reflect marked psychiatric-related functional limitations and diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood, chronic. (R. 96-97.) He found that Plaintiff's attention, concentration and memory were sufficient for simple and routine repetitive tasks. (R. 97.)

C. <u>Additional Evidence Submitted to the District Court</u>

As noted above, on June 19, 2017, after the ALJ decision and Appeals Council's refusal to review, Plaintiff filed a Complaint in this Court which included a supplemental medical report entitled, "Psychiatric/Psychological Impairment Questionnaire" ("Questionnaire") prepared by Dr. Palma, dated May 18, 2017. (Questionnaire, D.E. 1-2 at 31-35.) The Questionnaire indicates that Plaintiff has been treated by Dr. Palma and therapist Julie Stark biweekly since August 16, 2015 at New Horizon Counseling Center. (Questionnaire at 31.) It states that at Plaintiff's psychiatric exam on October 1, 2015, he was diagnosed with "major depression, single episode, moderate as well as an unspecified anxiety disorder." (Questionnaire at 31.) The Questionnaire also provides a list of Plaintiff's prescribed

medications, including Wellbutrin, Risperdal, Buspar and Trazadone. (Questionnaire at 31.)

According to this additional evidence, Plaintiff's most recent exam had been on May 16, 2017. (Questionnaire at 31.) Notably, Dr. Palma's Questionnaire provides that Plaintiff has fifteen mental marked degrees of limitation including Plaintiff's abilities to: remember locations and work-like procedures; understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; sustain ordinary routine without supervision; work in coordination with or near others without being distracted by them; make simple work-related decisions; complete a workday without interruption from psychological symptoms; perform at a consistent pace without rest periods of unreasonable length or frequency; interact appropriately with the public; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to workplace changes; travel to unfamiliar places or use public transportation; set realistic goals; and make plans independently. (Questionnaire at 34.)

The Questionnaire also states that Plaintiff "was recently diagnosed by his cardiologist with a thoracic aortic aneurysm which may or may not have been a symptom of severe physical and emotional stress." (Questionnaire at 33.) Dr. Palma's report further opines that Plaintiff "is at a severe

disadvantage in this day and age not knowing how to read or write definitely do not set him up to be in a competitive work environment." (Questionnaire at 35.) In her "best medical opinion", Dr. Palma indicates that Plaintiff's symptoms and related limitations apply as far back as birth "but were exacerbated during school years and the 2012 event has caused [his] personality to change." (Questionnaire at 35.)

DISCUSSION

I.   Standard of Review

In reviewing the ruling of an ALJ, the Court does not determine de novo whether the plaintiff is entitled to disability benefits.  Thus, even if the Court may have reached a different decision, it must not substitute its own judgment for that of the ALJ.  See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991).  If the Court finds that substantial evidence exists to support the Commissioner's decision, the decision will be upheld, even if evidence to the contrary exists.  See Johnson v. Barnhart, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003).

"Substantial evidence is such evidence that a reasonable mind might accept as adequate to support a conclusion."  Id.  The substantial evidence test applies not only to the ALJ's findings of fact, but also to any inferences and conclusions of law drawn from such facts.  See id.  To determine if substantial evidence exists to support the ALJ's findings, this Court must "examine the

entire record, including contradictory evidence and evidence from which conflicting inferences may be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir.1999) (internal quotation marks and citation omitted).

## II.  Determination of Disability

A claimant must be disabled within the meaning of the Act to receive disability benefits.  See Boryk ex. rel Boryk v. Barnhart, No. 02-CV-2465, 2003 WL 22170596, at *7 (E.D.N.Y. Sept. 17, 2003).  A claimant is disabled under the Act when he can show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The claimant's impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner must apply a five-step analysis when determining whether a claimant is disabled as defined by the Act. See 20 C.F.R. §§ 404.1520, 416.920.  First, the Commissioner considers whether the claimant is currently engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  Second, the Commissioner considers whether the claimant suffers from a "severe

medically determinable physical or mental impairment" or a severe combination of impairments that satisfy the duration requirement set forth at 20 C.F.R. § 404.1509. Third, if the impairment is "severe," the Commissioner must consider whether the impairment meets or equals any of the impairments listed in Appendix 1 of the Social Security regulations. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, if the impairment or its equivalent is not listed in the Appendix, the claimant must show that he does not have the residual functional capacity to perform tasks required in his previous employment. 20 C.F.R. § 404.1520(a)(4)(iv). Fifth, if the claimant does not have the residual functional capacity to perform tasks in his previous employment, the Commissioner must determine if there is any other work within the national economy that the claimant is able to perform, considering his residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled and entitled to benefits.

The claimant has the burden of proving the first four steps of the analysis, while the Commissioner carries the burden of proof for the last step. Boryk, 2003 WL 22170596, at *7 (citing Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000)). "In making the required determinations, the Commissioner must consider: (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the

claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience." Id. at *8.

III.  The ALJ's Decision

Here, the ALJ applied the five-step analysis described above and determined that Plaintiff was not disabled. (R. 10-19.) At step one, the ALJ found that while Plaintiff had worked during the relevant period, he had not engaged in substantial gainful activity since May 9, 2012, the alleged disability onset date. (R. 12.)  At step two, the ALJ found that Plaintiff had severe impairments, including anxiety, depression, and learning disorder with impairment in reading and written expression.  (R. 12.)  At this step, the ALJ also found that the Plaintiff had non-severe impairments, including hypertension, prior lap band surgery, and prior rotator cuff surgery which she considered when drafting Plaintiff's residual functional capacity.  (R. 12-13.)  At step three, the ALJ found that Plaintiff's impairments did not meet or equal the severity of any of the impairments listed in Appendix 1 of the Social Security regulations. (R. 13.)  Specifically, she found that "the claimant's mental impairments do not cause at least two 'marked' limitations."  (R. 14.)  The ALJ concluded that Plaintiff

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional

limitations: simple, routine and repetitive
tasks; work at a low stress job, defined as
not requiring an assembly line pace, with only
occasional decision making, and occasional
changes in the work setting; occasional
interaction with the general public,
coworkers, and supervisors; and cannot read or
write above the third grade level.

(R. 14-15.) At step four, the ALJ concluded that Plaintiff was
unable to perform his past relevant work. (R. 17.) At step five,
the ALJ concluded that Plaintiff could perform other work existing
in the national economy based on his age, education, work
experience, and residual functional capacity. (R. 17.)
Accordingly, the ALJ determined that Plaintiff was not disabled.
(R. 18.)

In reaching her decision, the ALJ accorded "good weight"
to Dr. Herman's opinion because his opinion was consistent with
the examination results and the overall treatment history.
(R. 16.) Dr. Herman deemed Plaintiff to have average cognitive
functioning despite somewhat below average attention and
concentration and mixed memory skills. (R. 16.) Dr. Herman noted
that there were no indications of moderate to marked limitations
with respect to Plaintiff's ability to perform complex task and
appropriately deal with stress. (R. 16.)

The ALJ accorded "some weight" to Dr. Palma's opinion as it
was consistent with the overall evidence, however, some extreme
limitations noted were not reflected in the treatment history. (R.

16.)  Dr. Palma's treatment notes showed that Plaintiff's cognition, insight, judgment, perception, and thought process were within normal limits but there was mild to moderate limitations in his concentration and memory.  (R. 16.)

Finally, the ALJ accorded "some weight" to a state psychiatric consult because this opinion was provided by a non-examining source who did not review the entire record at the hearing level.  (R. 16.)  After considering the evidence, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible.  (R. 17.) Thus, the ALJ concluded that based on conflicting evidence and inconsistencies in Plaintiff's statements, Plaintiff's allegations of his illiteracy were not fully credible.  (R. 17.)

IV. <u>Analysis</u>

Plaintiff asks this Court to remand the case to the Commissioner for further proceedings based on the following three arguments: (1) the ALJ's decision was based on an incomplete record without an updated psychiatric evaluation from Plaintiff's psychiatrist;[3] (2) Plaintiff was provided with an incomplete

---

[3] Plaintiff contends that the ALJ could have adjourned the hearing to a later date knowing that the record was incomplete but instead issued a decision without Dr. Palma's updated evaluation.  (Pl.'s Br. at 5.)  However, it appears from the

transcript of the ALJ's hearing by the Social Security Administration, violating his due process rights in his ability to appeal the ALJ's decision; and (3) the ALJ further violated his due process rights by failing to inquire about Plaintiff's competency to testify given his learning disability and given the "mind altering prescription medications" he was taking. (Pl.'s Br.) The Commissioner did not respond. Because the Court finds that the ALJ's decision was based on an incomplete record given the new evidence offered by Plaintiff, remand is required, and the Court need not address Plaintiff's additional arguments.

A. <u>Standard for Consideration of Additional Evidence</u>

Generally, "evidence not contained in the administrative record may not be considered [by a district court] when reviewing the findings of the Commissioner." <u>Brown v. Barnhart</u>, 2003 WL 1888727, at *10 (S.D.N.Y. Apr. 15, 2003) (citations omitted), <u>aff'd</u>, 85 F. App'x 249 (2d Cir. 2004). A district court may remand a case to allow additional evidence to be considered by the Commissioner "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to

_____

record that subsequent to the hearing, the ALJ did receive additional medical evidence from Dr. Palma which she admitted into evidence and considered in making her determination. (R. 10) ("Additional evidence was proffered and submitted into evidence after the hearing, exhibited as 8F.") Nothing in the record or in Plaintiff's papers show that Plaintiff or his attorney made the ALJ aware that there was further outstanding evidence.

incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). First, a claimant must show that the evidence is "new and not merely cumulative of what is already in the record." Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988) (internal quotation marks omitted) (citing Szubak v. Sec'y of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1984)). Second, the claimant must show that the new evidence is "material," where it is "(1) relevant to the claimant's condition during the time period for which benefits were denied and (2) probative." Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004) (internal quotation marks omitted). Materiality also requires "a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide a claimant's application differently." Id. (alteration in original; internal quotation marks and citation omitted). Third, the claimant must show good cause for failing to present the evidence during earlier proceedings. Tirado, 842 F.2d at 597 (citing Tolany v. Heckler, 756 F.2d 268, 272 (2d Cir. 1985)).

The Court finds this tripartite standard for the consideration of Dr. Palma's Questionnaire to be satisfied. First, the additional evidence submitted is new and not merely cumulative. Though the Questionnaire contains information from Plaintiff's 2015 examination which already appears in the record, it also contains additional more recent information. See Mendez ex rel. E.V. v. Astrue, No. 11-CV-4297, 2013 WL 1686485, at *9 (E.D.N.Y.

April 18, 2013) (finding medical records related to claimant's worsening condition were not cumulative and could be considered by the ALJ on remand because they were not available prior to the time the administrative record was closed). The Questionnaire references Plaintiff's more recent May 16, 2017 exam and provides new information regarding his mental limitations. (See Questionnaire.) Therefore, though this information was not submitted to the ALJ or the Appeals Council, it may be considered by the ALJ on remand because it was not available prior to the time the administrative record was closed.

Second, the evidence is material because though it was generated after the ALJ's decision, it relates to Plaintiff's condition during the time period for which benefits were denied. See Pollard, 377 F.3d at 193–94 (noting that evidence generated after the ALJ's decision can be relevant to determining the severity and continuity of impairments during the relevant period); Lisa v. Sec'y of Dep't of Health and Human Servs., 940 F.2d 40, 44 (2d Cir. 1991) ("[W]hen . . . a diagnosis emerges after the close of administrative proceedings that sheds considerable new light on the seriousness of [a claimant's] condition, evidence of that diagnosis is material and justifies remand.") (internal quotation marks and citations omitted; third alteration in original); Mendez, 2013 WL 1686485 at *10 ("Evidence developed after the ALJ's decision can also be material if it shed[s] light on the

seriousness of the claimant's condition at the time of the ALJ's decision.") (internal quotation marks and citation omitted).

Here, it is clear that Dr. Palma's Questionnaire relates to the relevant time period because it references Plaintiff's October 1, 2015 psychiatric exam and provides the medications he was prescribed at that time. (Questionnaire at 31.) Furthermore, this new evidence is probative and likely to have affected the ALJ's decision on Plaintiff's claim. In determining that Plaintiff does not have an impairment that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, the ALJ found that "the claimant's mental impairments do not cause at least two 'marked' limitations." (R. 14.) This new evidence suggests that that Plaintiff may have had sufficient mental marked limitations (Questionnaire at 34) and could have altered the ALJ's consideration of Plaintiff's claim. See Lisa, 940 F.2d at 44 (finding new evidence "would present a reasonable possibility of influencing the Secretary to decide [claimant's] application differently", and "would suggest that [Plaintiff] had an impairment substantially more severe than was previously diagnosed"); Garcia v. Colvin, No. 12-CV-4965, 2014 WL 1311938, at *8 (E.D.N.Y. March 27, 2014) ("[I]t is reasonable to assume that a more developed record, based on the newly submitted evidence that could address the Plaintiff's condition during the relevant time period, would affect the Commissioner's decision.")

Therefore, even though this Questionnaire was created after the relevant time period, it is material to Plaintiff's claim.

Finally, Plaintiff had good cause for not presenting the additional evidence sooner given that the Questionnaire was not in existence at the time that the ALJ issued her decision. See Lisa, 940 F.2d at 43 (Good cause exists where "the evidence surfaces after the Secretary's final decision and the claimant could not have obtained the evidence during the pendency of that proceeding."); see also Pollard, 377 F.3d at 193 ("Because the new evidence submitted . . . did not exist at the time of the ALJ's hearing, there is no question that the evidence is 'new' and that 'good cause' existed for h[is] failure to submit this evidence to the ALJ."); accord Spain v. Barnhart, No. 02-CV-4605, 2003 WL 21254782, at *4, (E.D.N.Y. May 29, 2003) (finding doctor's failure to provide medical records before the ALJ hearing constituted good cause for plaintiff's delay in producing them); Garcia, 2014 WL 1311938 at *7 (same); Canales v. Comm'r of Soc. Sec., 698 F. Supp. 2d 335, 341 (E.D.N.Y. 2010) (same). As discussed above, Plaintiff's attorney noted at the hearing that they had requested an updated residual functional capacity from Dr. Palma but had only received his notes prior to the hearing. (R. 39.) This new evidence from Dr. Palma was not provided to Plaintiff until after the ALJ's decision and one month after the Appeals Council's denial of review. Therefore, Plaintiff had good cause for failing to

submit this evidence to the ALJ.

Accordingly, the Court shall remand this matter to the Secretary for further development of the record, and to consider this new medical evidence in making its benefits determination.

CONCLUSION

In accordance with the foregoing analysis, this matter is REMANDED to the Secretary for further appropriate proceedings. The Clerk of the Court is directed to mark this matter CLOSED and to mail a copy of this Order to the pro se Plaintiff.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: February   19  , 2019
       Central Islip, New York